UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RUTH J.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:23-cv-64

Bowman, M.J.

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review.[2] The Court will AFFIRM the ALJ's finding of non-disability because it is supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

This judicial appeal seeks review of the denial of an application for Supplemental Security Income ("SSI"). (Tr. 91-92). The administrative record in this case contains both the application at issue in this appeal and records related to the denial of a prior application. In the earlier application, filed on July 24, 2017, Plaintiff also sought SSI. After that application was denied initially and on reconsideration, Plaintiff sought and received

---

[1] Due to significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.
[2] The parties have consented to final disposition before the undersigned magistrate judge in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

1

a hearing before an administrative law judge ("ALJ"). On September 10, 2019, ALJ Amy Rosenberg issued an adverse written decision. (Tr. 72-90). Plaintiff did not seek judicial review of the September 10, 2019 decision.

On June 26, 2020, Plaintiff filed a new application for SSI, alleging disability beginning on July 24, 2017. (Tr. 91-92). She later amended her alleged onset date to June 25, 2020. (Tr. 47, 61). After her claim was denied initially and upon reconsideration, Plaintiff again requested an evidentiary hearing before an ALJ. On December 20, 2021, Plaintiff appeared by video with her attorney and gave testimony before ALJ Suzette Knight; a vocational expert also testified. (Tr. 54-102).

Plaintiff was 50 years old on her amended alleged disability onset date. She obtained a GED and has past relevant work as a machine operator, packager, and laborer. (Tr. 68). She is single with no children, has a dog, and lives in house with a friend.

On January 26, 2022, the ALJ issued an adverse written decision that concluded that Plaintiff is not disabled.(Tr. 7-30). The ALJ considered the prior adverse decision to determine whether she was bound by the prior determination of Plaintiff's impairments and residual functional capacity ("RFC"). *See, generally, Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). However, she determined that Plaintiff "has a greater degree of physical and mental limitations than was assessed by the prior ALJ." (Tr. 16).

Having determined that she was not bound by the September 2019 decision, ALJ Knight determined that Plaintiff has the following severe impairments: "degenerative disc disease with history of cervical and lumbar fusions; osteoarthritis of left knee; curvature of spine; carpal tunnel syndrome; right shoulder partial rotator cuff tear; depression disorder; anxiety disorder; and post-traumatic stress disorder (PTSD)." (Tr. 13). The ALJ

also found that Plaintiff has the medically determinable but nonsevere impairments of urinary incontinence and substance use disorder. (*Id.*) Considering all of Plaintiff's severe and nonsevere impairments, the ALJ determined that none, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (Tr. 14)

Both the 2019 decision by ALJ Rosenberg and the 2022 decision by ALJ Knight found that Plaintiff remains capable of a limited range of light work. In the 2022 decision, ALJ Knight added the following limitations:

> the claimant can occasionally push, pull and reach overhead with the right upper extremity. She can frequently handle and finger items bilaterally. The claimant can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch and crawl. The claimant can tolerate occasional exposure to vibration, but never to hazards - such as unprotected heights or moving mechanical parts. She can maintain concentration and persistence to perform unskilled work at a non-production pace (i.e. assembly line) in two hour increments in order to complete an eight hour workday; make simple work-related decisions. The claimant can frequently interact with supervisors and coworkers; and occasionally interact with the public. She can tolerate few changes in a routine work setting. She can understand, remember and carry out simple instructions.

(Tr. 16).

Based upon Plaintiff's age, education, and RFC, and considering testimony from the vocational expert, ALJ Knight found that Plaintiff could not perform her past work, but could perform other jobs that exist in significant numbers in the national economy, including the representative unskilled positions of machine tender, conveyor tender, and inspector. (Tr. 24). Therefore, the ALJ determined that Plaintiff was not under a disability. (Tr. 25) The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

3

In this appeal, Plaintiff argues that the ALJ erred: (1) by failing to develop the record concerning the level of detail in the simple jobs that Plaintiff could perform; and (2) by failing to properly assess Plaintiff's handling and fingering limitations. The Court finds no error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion....

4

> The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ was not Required to Obtain Additional Medical Evidence Regarding Plaintiff's DOT Reasoning Level Skills**

Plaintiff's first claim is that the ALJ failed to develop the record concerning the level of detail in the simple unskilled work that Plaintiff can perform. Plaintiff acknowledges that the record was reviewed by state agency psychologists who rendered opinions in December 2020 and February 2021 and agreed she could perform simple unskilled work. But Plaintiff points out that the agency psychologists neglected to specify whether Plaintiff could perform "detailed, simple work" or "undetailed, simple work." (Doc. 11, PageID 1780-81).

Neither of the agency psychologists who reviewed the record at the initial and reconsideration levels completed a standard Psychiatric Review Technique Form ("PRTF"). The PRTF assesses an individual's abilities to understand, remember, and carry out "very short and simple instructions" as well as "detailed instructions." Rather than completing a PRTF in this case, both reviewing psychologists considered the mental RFC findings in the September 10, 2019 decision along with evidence that post-dated that decision. Finding the longitudinal evidence to be consistent under *Drummond*, the consulting reviewing psychologists explicitly adopted the mental RFC from the 2019 decision.

ALJ Knight found the reviewing psychological opinions to be "persuasive" but determined that she was not bound by the prior decision under *Drummond*. Therefore, ALJ Knight added PTSD to Plaintiff's list of severe mental impairments. (Tr. 13). And, while assessing a similar mental RFC to that determined in 2019, ALJ Knight added greater limitations overall. For example, ALJ Knight added a limitation to Plaintiff's ability to perform "unskilled work at a non-production pace (i.e. assembly line) in two hour

6

increments" as well as a new limitation to "few changes in a routine work setting" (See Tr. 16, compare with "occasional changes" assessed in 2019). By contrast, ALJ Knight did not deviate from the 2019 limitations with respect to Plaintiff's abilities to understand, remember, and carry out "simple" tasks. (*See* Tr. 16, noting that ALJ Rosenberg had found that Plaintiff could understand, remember and carry out "simple, routine tasks" and agreeing that Plaintiff could understand, remember and carry out "simple instructions.").

Plaintiff takes no issue with ALJ Knight's assessment of the psychological opinions, such as they were. Nor does she dispute the ALJ's conclusion that she is limited to unskilled work, defined as "work which needs little or no judgment to do *simple duties* that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a); SSR 83-10, 1983 WL 31251 at *7 (emphasis added). (*See also* Tr. 16, limiting Plaintiff to "unskilled" work in a "routine work setting" with the ability to "understand, remember and carry out simple instructions" and make only "simple work-related decisions"). But Plaintiff questions whether the mental RFC set forth by the ALJ sufficiently defines <u>what kind</u> of "simple duties" or "simple instructions" she remains capable of understanding and carrying out.[3]

Plaintiff asserts that ALJ Knight had an obligation to obtain *additional* opinion evidence on whether Plaintiff can understand, remember and carry out "simple, detailed" instructions or only "simple, non-detailed" work. (Doc. 11, PageID 1781). In the absence of definitive opinion evidence, Plaintiff maintains that the ALJ should have limited her to "simple, non-detailed tasks." (*Id.*). The distinction matters, according to Plaintiff, because

---

[3]In addition to being defines by "simple duties," unskilled work also includes "the ability to understand, carry out, and remember simple instructions." SSR 85-15, 1985 WL 56857, at *4.

7

all three representative jobs to which the VE testified at the 2022 hearing are described as requiring a Department of Transportation General Educational Development ("GED") Reasoning Level of 2, which roughly translates to "detailed but uninvolved" instructions.

The GED Scale is actually comprised of three separate scales or divisions: (1) Reasoning Development; (2) Mathematical Development; and (3) Language Development. *See* Appendix C - Components of the Definition Trailer, 1991 WL 688702.

> The Department of Transportation assigns each job a General Educational Development (GED) score, which considers the reasoning, mathematical, and language development required for satisfactory job performance. *See Dictionary of Occupational Titles*, Components of the Definition Trailer, 1991 WL 688702 (1991). Reasoning development is divided into six levels. *Id.*

*Huizar v. Commissioner of Social Security*, 610 F.Supp.3d 1010, 1020 (E.D. Mich. 2022). The lowest level on the Reasoning Development scale - Level 1 - requires an individual to "[a]pply commonsense understanding to carry out simple one- or two-step instructions." *Id.* In contrast, Reasoning Level 2 means that the job requires an individual to "[a]pply commonsense understanding to carry out *detailed but uninvolved* written or oral instructions." *Id.* (emphasis added). Thus, Reasoning Level 2 encompasses simple work that requires more than two-step instructions.

Plaintiff argues that the record is ambiguous as to whether she can perform work consistent with Reasoning Level 2. She points to errors on her most recent psychological consultative examination as suggestive of the lowest possible GED Reasoning Level 1.

The undersigned finds no error. First, it is Plaintiff who bears the burden of proving her limitations. If she believed that she was limited to one or two-step instructions (consistent with GED Reasoning Level 1), she was required to develop the record by asking the VE about that more extreme level of limitation. "Promoting the claimant's

8

case… is not the ALJ's obligation." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022). It is "[o]nly under special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures" that an ALJ has "a special, heightened duty to develop the record." *Trandafir v. Comm'r of Soc. Sec.*, 58 Fed. Appx. 113, 115 (6th Cir. 2003). The majority in *Moats* held that such a duty arises only when the record reflects "extreme" circumstances, rather than in every case in which a litigant represents himself. *Id.*, 42 F.4th at 564. Plaintiff's primary contention -- that the ALJ failed to develop the record because the reviewing consultants did not define what kind of "simple" instructions she could follow - confuses the ALJ's burden with her own. Given that it was Plaintiff who bore the burden of proof in this case, Plaintiff herself might have offered additional opinions or other evidence. The fact that she did not does not shift the burden to the ALJ. *Accord Culp v. Comm'r of Soc. Sec.*, 529 Fed. Appx. 750, 751 (6th Cir. 2013) (ALJ had no duty to elicit an additional medical opinion given the "considerable amount" of evidence in the record and fact that plaintiff was represented by counsel).

The lack of any duty of the ALJ to solicit additional opinion evidence on Plaintiff's GED Reasoning Level is underscored by the fact that such GED scores are purely advisory. See, e.g., *Matelski v. Comm'r of Soc. Sec.*, 149 F.3d 1183, 1998 WL 381361, at *6  (6th Cir. 1998) (rejecting claim that ALJ's RFC limitation to "one and two-step" instructions was inconsistent with VE's testimony that the plaintiff could perform jobs at a higher reasoning level on grounds that the DOT reasoning development requirements are "merely advisory in nature.") (citation omitted); *accord Hodge v. Colvin*, No. 14-cv-246-DLB, 2015 WL 2041927, at *5 (E.D. Ky. April 20, 2015) (rejecting claim regarding

9

reasoning levels because they are "purely advisory" and specific vocational preparation ("SVP") levels differ from GED levels). Similarly, the Sixth Circuit has rejected the argument that an ALJ is required to identify and match up GED "reasoning levels" when defining the RFC. *Monateri v. Comm'r of Soc. Sec.*, 436 Fed. Appx. 434, 446, 2011 WL 3510226, at *12 (6th Cir. Aug. 11, 2011) ("there is no precedent that requires the Commissioner to align DOT 'reasoning levels' with RFC classifications"); *see also*, *generally*, *Russell v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-291, 2014 WL 1333262, at *13-14 (N.D. Ohio Mar. 31, 2014) (finding that the plaintiff's "limitation to simple one-or two-step instructions, simple routine tasks ... is not inconsistent with the ability to perform jobs with reasoning Level 2.").

In the case presented, the mental RFC determined by the ALJ appropriately specified that Plaintiff "can understand, remember and carry out simple instructions" but is limited to "unskilled work at a non-production pace…[with only] simple work-related decisions," and "few changes in a routine work setting." It is worth noting that – while the ALJ had no affirmative duty to additionally define Plaintiff's GED Reasoning Level – the RFC as defined is fully consistent with GED Reasoning Level 2. *See*, *e.g.*, *Monateri*, 436 Fed. Appx. at 446, 2011 WL 3510226, at *12 (holding there is "no authority for the proposition that jobs requiring reasoning levels two or three are inconsistent as a matter of law with a limitation to simple work."); *Huizar*, 610 F.Supp.3d at 1021 (RFC limitation to simple, routine, and repetitive tasks is consistent with GED Reasoning Level 2); *Vallee v. Comm'r of Soc. Sec.*, No. 1:19-cv-114, 2020 WL 3445598, at *14 (S.D. Ohio June 24, 2020) (rejecting plaintiff's argument that his limitation to simple routine work was inconsistent with a reasoning level of 2); *Padilla v. Saul*, No. 3:18-CV-580-CHB, 2020 WL

10

1651227, at *10 (W.D. Ky. Apr. 3, 2020) ("[T]he ALJ's finding that Plaintiff could perform simple one to three step tasks is consistent with the ability to perform jobs requiring level two reasoning.").[4]

Last, the record as a whole contains substantial evidence to support the ALJ's mental RFC, consistent with work that requires GED Reasoning Level 2. The two reviewing psychologists on whom ALJ Knight relied expressly adopted the mental RFC limitations determined by ALJ Rosenberg in 2019.

> The MRFC given is an adoption of the MRFC findings from the ALJ/AC decision dated 09/10/2019 based on AR 98-4.
>
> She can understand, remember, and carry out simple, routine tasks and can make simple work-related decisions. She should not perform work that requires her to maintain a fast-paced production rate. She can tolerate frequent interactions with supervisors, coworkers, and occasional interactions with the public. She can adapt to occasional changes in the routine work setting.

(Tr. 100, 111). Because Drs. Katz and Waggoner relied on the 2019 RFC findings from ALJ Rosenberg, the undersigned reviews her decision.

ALJ Rosenberg found "persuasive" the opinions of three earlier agency psychologists, including the November 25, 2017 opinions of a consultative examiner, Norman Berg, Ph.D., who opined that Plaintiff could manage her benefit funds, and could understand, remember and carry out verbal instructions. (Tr. 82). On December 5, 2017, a reviewing psychologist opined that:

> [C]laimant could perform simple <u>one to three step tasks</u> that do not involve demands for a fast pace or production quotas, she should not work with the

---

[4] In contrast to this body of case law, Plaintiff cites to a single unpublished case, *Lee v. Colvin*, 2013 WL 1878888 at *9 (W.D. Ky. May 3, 2013). But in *Lee*, the ALJ failed to satisfy her affirmative duty to inquire if the VE's testimony was consistent with the DOT, and Plaintiff demonstrated that the error was not harmless based on an apparent conflict between the "simple instructions" RFC limitation and a job that required a GED Reasoning Level of 3, not 2).

11

>  public, she could relate to coworkers and supervisors on an intermittent basis, and she should not work in team settings. She could adapt to occasional changes.

(Tr. 81, emphasis added). On March 26, 2018, a second agency psychologist adopted identical mental RFC limitations at the reconsideration level. (Tr. 82). In other words, ALJ Rosenberg relied on opinions that assessed Plaintiff with the ability to perform one to three step tasks, consistent with GED Reasoning Level 2.

The only evidence that Plaintiff cites to support the lower GED Reasoning Level 1 (restricting her to one- or two-step instructions) is indirect evidence contained in her most recent CE exam, conducted by Brian Griffiths, Psy.D. and dated December 9, 2020. Dr. Griffiths noted that Plaintiff appeared to be depressed and was tearful during the clinical interview. (Tr. 887). He assessed her with "low-average intelligence." (Tr. 886). In evaluating her cognitive functioning, he noted errors on mathematical tasks[5] administered during the clinical interview:

> Ms. [J.] was alert, responsive and oriented to time, place, person, and situation. She was not confused. Her remote recall was adequate as she was able to provide personal historical information without difficulty. As far as her shortterm memory skills, Ms. [J.] recalled six digits forward. She recalled three digits backwards. She remembered one of three objects after a five-minute delay. Ms. [J.] followed the conversation during the interview. She did not ask the examiner to repeat and/or clarify questions. However, she was unable to perform serial sevens. She committed multiple errors counting backwards from twenty by threes. Ms. [J.] was unable to mentally calculate twelve minus five or the value of six quarters. Ms. [J.] explained that the saying, "What goes around comes around" means, "Karma." She stated that a "piano" and a "drum" are similar because they are both, "music." When asked to name three cities, she said, "New York, West Union and Seaman." She reported that there are sixty seconds in one minute.

(Tr. 887).

---

[5]As discussed above, the GED Reasoning scale differs from the GED Mathematical scale.

Despite acknowledging that Plaintiff's "arithmetic reasoning abilities were not especially strong during the examination," Dr. Griffiths opined that "she probably has the intellect to manage personal funds." (Tr. 888). He pointed out that she quit school in the ninth grade but was able to obtain her GED. And notwithstanding mathematical difficulties at the time of his interview, she was never identified as a special education student. (*Id.*) Presenting with low-average intelligence, she was able to understand and follow simple instructions and performed within normal limits on a simple structured task designed to assess short-term memory skills. She did not require repetition or clarification of questions. (*Id.*) Most importantly, Dr. Griffiths did not limit Plaintiff to one or two step instructions, nor did he assess a GED Reasoning Level score. And the reviewing psychologists on whom ALJ Knight relied fully considered his CE report prior to adopting a prior mental RFC that includes the ability to perform jobs that require a GED Reasoning Level of 2.

To sum up, the Court finds no error for multiple reasons: (1) ALJ Knight had no duty to expand the record or obtain additional opinion evidence; (2) the RFC was not required to match a GED Reasoning Level; (3) alternatively, the RFC as defined is consistent with GED Reasoning Level 2; and (4) the RFC as defined is substantially supported by the record as a whole.

**C. Plaintiff's Handling and Fingering Limitations**

In her second claim, Plaintiff argues that the ALJ did not sufficiently articulate the supportability and consistency of the consulting physicians' opinions concerning her handling and fingering limitations.

13

On October 22, 2020, agency consulting physician Mehr Siddiqui, M.D., reviewed the record at the initial consideration level and opined that Plaintiff was limited to "frequent" overhead reaching with the right arm, frequent handling and fingering bilaterally, no exposure to hazards, frequent balancing and climbing of ramps/stairs, no climbing of ladders/ropes/scaffolds, and the ability to engage in all other postural activities occasionally. (Tr. 98-100). At the reconsideration level, Dr. Green offered the same handling and fingering limitations. (Tr. 110). Both physicians attributed Plaintiff's handling and fingering limitations to her "carpal tunnel syndrome and [history] of cervical fusion." (Tr. 99, 110). But in contrast to the opinions of the two agency reviewing physicians, a treating source, Nurse Practitioner ("NP") Havens, opined that Plaintiff could use her fingers for fine manipulation only 25% of the time and perform no handling at all. (Tr. 1333).

The ALJ found the opinions of the agency consultants to be persuasive and adopted their opinions concerning handling and fingering limitations, simultaneously explaining why NP Havens' opinions were "not persuasive." (Tr. 22). Notably, Plaintiff complains solely about the ALJ's articulated analysis of the consulting opinions; she does not assert error in the analysis of NP Havens' opinions.

Essentially, Plaintiff's claim is that the ALJ's analysis of the consultants' opinions was too cursory. The undersigned disagrees. The regulations require the ALJ to include analysis of the "supportability" and "consistency" factors, but do not require use of those terms. And "the regulations that require ALJs to explain their analysis of the supportability and consistency factors do not require those explanations to contain a specific level of detail." See *Chad T. v. Comm'r of Soc. Sec. Admin.*, Case No. 3:21-cv-00052, 2022 WL

14

4355001 at *8 (S.D. Ohio Sept. 20, 2022) (quoting Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5854 (Jan. 18, 2017)). Instead, the regulations contemplate the level of detail will vary from case-to-case. *Id.*; *accord Kimberly P. v. Comm'r of Soc. Sec.*, No. 1:22-cv-596, 2023 WL 3320419 at *5 (S.D. Ohio May 9, 2023) ("the appropriate level of articulation will necessarily depend on the unique circumstances of each claim.").

An ALJ's decision must be read as a whole when determining whether he or she has complied with the regulatory articulation requirements. Here, with respect to supportability, the ALJ found the consulting opinions to be persuasive in part because they stated that they were not adopting the "the prior decision residual functional capacity because there was a new medically determinable impairment for the claimant's right shoulder and her carpal tunnel was now severe." (Tr. 21). The ALJ further explained that Dr. Siddiqui's consulting opinions were:

> supported by citation to objective medical evidence and narrative explanation. It is also consistent with the claimant's objective findings and her treatment history. The undersigned also included limitations for the claimant's right upper extremity due to her shoulder impairment and manipulative limitations due to carpal tunnel. Greater limitations are not supported by the record which shows the claimant's treatment has longitudinally remained consistent. Additionally, the record shows the claimant is able to volunteer at a food bank and recently planned on attending a women's retreat through her church.

(Tr. 21; *see also* Tr. 22).

In terms of consistency, Plaintiff briefly argues that the ALJ failed to account for Plaintiff's subjective testimony that she frequently drops things and struggles with handling objects. (Tr. 60-61). But the ALJ expressly considered Plaintiff's subjective testimony that she "cannot feel her hands and drops 'everything' and that '[i]f something does not have a handle it is "gone." (Tr. 17). The ALJ also discussed other subjective

15

reports that undermined Plaintiff's testimony that her physical limitations were disabling, including her report that she drives once or twice a week to church, shops, reads, can manage her finances, performs household chores, cares for her dog, volunteers at a food bank, spends time with others three to five days a week, and has no difficulties with adequate grooming and hygiene. (Tr. 14-15). Ultimately, the ALJ discredited Plaintiff's subjective reports. (*See* Tr. 17, finding Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."). Plaintiff does not challenge that adverse credibility/consistency determination.

Considering the consistency of the consulting opinions with the remainder of the record, the ALJ reasoned that the opinions were consistent with a significant number of objective medical records including evidence of Plaintiff's "ability to fire all upper and lower extremity motor groups" in December 2019 (Tr. 17), and lack of any muscle weakness, radiating pain into her limbs, or tingling on examination in May 2020. (Tr. 17-18). The ALJ discussed a July 2020 MRI that revealed moderate to severe degenerative changes in her right shoulder. (Tr. 18). But the ALJ pointed out that both upper extremities exhibited "full range of motion in all planes" and "5/5 muscle strength," even though she had "tenderness at the AC joint" on the right. (Tr. 18). Of particular relevance to fingering and handling limitations, the ALJ noted a record that "[r]apid alternating movements and fine finger movements were intact," despite "decreased light touch at right 1st - 3rd digits." (Tr. 18). The ALJ discussed a subsequent MRI of the right shoulder in September 2021 that revealed mild to moderate tendinosis and osteoarthritis, for which Plaintiff was treated with a cortisone injection that worked "really well" according to her report on follow-up in

16

October 2021. (Tr. 18-19). An examination of the right shoulder at the time once again showed full range of motion in all planes with 5/5 strength in all planes. (Tr. 19).

Plaintiff points to a single medical record that reflected the presence of positive O'Brien, Hawkin, and Neer testing on October 5, 2021.[6] But the ALJ explicitly discussed that very same record as well as her negative Yergason's and speed's test and the fact that she was neurovascularly intact distally. (Tr. 19; *see also* Tr. 1516).

The ALJ also discussed Plaintiff's past successful surgical treatment for carpal tunnel syndrome in her right wrist, complaints that her symptoms were "slowly returning," and apparent lack of follow-up after her doctor recommended the use of nighttime splints and a reduction of activities that exacerbated her symptoms.

> The claimant also has a history of bilateral carpal tunnel syndrome. Treatment notes from August 2020 show the claimant had prior right carpal tunnel release with improvement of symptoms, but she reported her symptoms were slowly returning. She reported bilateral achiness and discomfort with numbness and tingling that radiated to her fingertips (Exhibit B3F/92). She was diagnosed with bilateral carpal tunnel but indicated she was going to have a right shoulder procedure prior to having the carpal tunnel addressed any further. Her doctor recommended she use nighttime splints and activity modification to avoid activities that exacerbated her symptoms (Exhibit B3F/95). The record does not show the claimant had any subsequent treatment for carpal tunnel syndrome.

(Tr. 19).

In short, the ALJ's analysis contains ample discussion of the supportability and consistency factors. *See Howard H. v. Comm'r of Soc. Sec.*, No. 2:20-cv-4932, 2022 WL 765217, at *5 (S.D. Ohio Mar. 14, 2022) (explaining that when one doctor bases his opinion on another's findings that are also in the record, overlap between "consistency"

---

[6]Plaintiff does not explain the significance of any of the referenced tests (which appear to be diagnostic tests relating to the shoulder) or how the positive tests would support greater than "frequent" fingering and handling limitations.

17

and "supportability" is inevitable). The Commissioner's findings must stand if substantial evidence supports them, regardless of whether the reviewing court would resolve conflicts in the evidence differently. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). *See also Hickey-Haynes v. Barnhart*, 116 Fed. Appx. 718, 726 (6th Cir. 2004) (stating "substantial evidence is a fairly low bar"). Reading the opinion as a whole, ALJ Knight's detailed discussion of the entire record provides substantial support for the physical RFC as determined, including the handling and fingering limitations endorsed by the consulting physicians.

### III. Conclusion and Order

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge